UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JACKY ROBINSON, JR.,<br>    *Plaintiff*,<br><br>    v.<br><br>KENNETH BUTRISK *et al.*,<br>    *Defendants*. | No. 3:21-cv-00050 (JAM) |

**ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Jacky Robinson, Jr., is a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* against numerous DOC officials principally alleging deliberate indifference to his mental health needs and personal safety. For the reasons set forth below, I will dismiss the complaint without prejudice for failure to allege facts that give rise to plausible grounds for relief.

BACKGROUND

Robinson names the following defendants in his complaint: Warden Kenneth Butrisk, Warden Walker, Counselor Supervisor Jaclyn Osden, Counselor Sandler, Interstate Coordinator Earlena Shepherd, Level Two Reviewer John Doe, Mental Health Clinician Lisa Simo Kinzer, Counselor Supervisor Molina, and Mental Health Doctor Cruz. Defendants Doe and Kinzer are named in their individual capacity only. All other defendants are named in their individual and official capacities.[1]

The following facts are alleged in Robinson's complaint and are accepted as true for

---

[1] Doc. #1 at 1-4.

purposes of initial review only.

Robinson is incarcerated at Cheshire Correctional Institution ("Cheshire"). On August 20, 2020, Robinson learned that Warden Butrisk had removed him from single-cell status.[2] A previous warden at Cheshire had helped Robinson obtain single-cell status in 2018 because of mental health, safety, and security issues.[3]

On August 22, 2020, Robinson wrote to Warden Butrisk explaining his need for a single cell and requesting a hearing to present evidence about why he was previously granted a single cell and continued to need a single cell.[4] As he explained in his letter, Robinson arrived in Connecticut from Ohio under the Interstate Corrections Compact.[5] Robinson alleges that when he arrived in Connecticut, staff "set [him] up" with violent and unstable cellmates so that they would physically assault him "due to [his] reason for transfer from Ohio."[6] Robinson informed Warden Butrisk that "mental health" had documented the reasons for single-cell status.[7] Warden Butrisk did not order an investigation or a hearing.[8]

On September 1, 2020, Robinson submitted a grievance explaining that a correctional officer in Ohio had placed a hit order on him in 2016.[9] While in Ohio Robinson was also physically assaulted in a cell by three inmates.[10] Robinson explained in the grievance that he

---

[2] *Id.* at 5 (¶¶ 1-2).
[3] *Ibid.*
[4] *Ibid.* (¶¶ 2-3).
[5] *Id.* at 5-6 (¶¶ 3-5).
[6] *Ibid.*
[7] *Ibid.* (¶ 6).
[8] *Ibid.*
[9] *Ibid.* (¶ 7).
[10] *Ibid.* (¶ 8).

believed that correctional officers in Connecticut were doing the same thing to him.[11]

Warden Walker, who had replaced Warden Butrisk, responded to the grievance, denying the request for a single cell.[12] Warden Walker stated that the matter had been investigated, but Robinson alleges that the matter had not been investigated because he was never called to disclose any documents, witness statements, or evidence.[13]

On September 13, 2020, Robinson wrote a letter to Counselor Supervisor Osden at the Connecticut interstate office and to Counselor Sandler asking for assistance maintaining single-cell status.[14] Robinson also contacted Shepherd to request assistance to retain single-cell status.[15] He told all three that they had the power to prevent any future psychological or other damage to him because they were designated to oversee his safety and health according to the Interstate Contract.[16] Although Sandler, Osden, and Shepherd were aware of an assault on Robinson by a correctional officer that occurred in November 2019 at Garner Correctional Institution ("Garner"), in retaliation for "contacting [Prison Rape Elimination Act]" and "in retaliation for [his] reason for transfer from Ohio," they refused to intervene on Robinson's behalf.[17]

On October 20, 2020, Robinson filed a Level Two grievance, alleging that there could not have been an investigation conducted at Cheshire because the State of Ohio had kept his interstate file confidential upon his arrival in Connecticut.[18] Robinson provided the phone

---

[11] *Ibid.* (¶¶ 7-8).
[12] *Ibid.* (¶ 9).
[13] *Ibid.* (¶¶ 9-10).
[14] *Id.* at 7 (¶11).
[15] *Ibid.*
[16] *Ibid.* (¶ 12).
[17] *Ibid..* (¶ 13).
[18] *Ibid.* (¶ 14).

3

number of an Ohio state trooper who could testify on his behalf.[19]  Defendant John Doe denied the grievance and made "a false statement of review."[20]

Kinzer was Robinson's mental health clinician and social worker when he first arrived at Cheshire in 2017.[21] In 2018, before obtaining single-cell status, Robinson informed Kinzer of his need for single-cell status, explaining his safety issues, incidents with staff and inmates at Cheshire, and the severe anxiety and depression he experienced as a result of the incidents.[22]

Robinson continued to see Kinzer from August 2020 through December 2020, although he would have to wait from three to ten days after submitting a request to do so.[23] During the sessions with Kinzer, Kinzer would "rudely" interrupt and argue with Robinson and not offer any mental health assistance.[24] On August 21 and October 30, 2020, Kinzer "did not try to help" Robinson after he expressed suicidal and depressive thoughts and even though Kinzer had files documenting Robinson's need for a single cell from 2018.[25] Kinzer offered no follow-up treatment or alternative treatment to Robinson's request for medication.[26] She did not respond to his reports of severe depression, weight-loss, and suicidal thoughts.[27] Robinson always left her office more stressed and depressed than when he entered it.[28]

In August 2020, Molina, who is the Americans with Disabilities Act (ADA) coordinator,

---

[19] *Ibid.*
[20] *Id.* at 7-8 (¶ 15).
[21] *Id.* at 8 (¶ 16).
[22] *Ibid.*
[23] *Ibid.* (¶ 17).
[24] *Ibid.*
[25] *Ibid.* (¶¶ 18-19).
[26] *Ibid*
[27] *Ibid.*
[28] *Ibid.*

told Robinson that there was nothing in his Ohio or Connecticut files to warrant single-cell status.[29] On November 13, 2020, Robinson submitted an ADA request for accommodation to Molina seeking permanent single-cell status.[30] Robinson asked that Molina obtain his mental health and medical records from Ohio to assist in the review of his single-cell status request.[31] Molina denied his ADA request for a single cell.[32]

On November 25, 2020, Robinson wrote to Dr. Cruz complaining about Kinzer's unprofessional conduct, his need for mental health services, his weight loss caused by mental health issues, and his request for disability accommodation in the form of single-cell status.[33] In a brief meeting on December 4, 2020, Dr. Cruz told Robinson that nothing in his files warranted a single cell, and his request would have to be approved by the warden.[34] Dr. Cruz said she would deny his request for accommodation for the same reason given by the wardens and Molina: "there is nothing in your Ohio or Connecticut file showing you must have [a] single cell," and it was up to the warden to approve a single cell request.[35] Dr. Cruz said that she would deny the single-cell status on the ground that he had reported suicidal thoughts.[36] Dr. Cruz also stated that Robinson's health and medical file would not be obtained or considered in the review of his ADA request.[37]

---

[29] *Id.* at 9 (¶ 21).
[30] *Ibid.* (¶ 20).
[31] *Ibid.* (¶ 22).
[32] *Ibid.* (¶ 25).
[33] *Ibid.* (¶ 23).
[34] *Id.* at 9-10 (¶ 24).
[35] *Id.* at 10 (¶ 25).
[36] *Ibid.*
[37] *Ibid.*

Dr. Cruz agreed to increase Robinson's mental health score and have him seen by a clinician other than Kinzer, but as of this filing Robinson has yet to be taken from his cell for counseling or evaluation for resuming mental health medications.[38] Robinson states that his headaches, which are exacerbated by bright lights, "pound against [his] skull" preventing him from thinking, concentrating, or getting out of bed.[39]

Robinson filed an ADA appeal on December 16, 2020 to challenge the denial of single-cell status.[40] In his appeal, he stated that he experienced depression, suicidal thoughts, stress, headaches, and weight loss after he was removed from single-cell status.[41] His symptoms were in remission during the years he was on single-cell status.[42] He stated that Molina and Dr. Cruz had violated his rights.[43] Robinson also stated that he has an antisocial disorder and most of his violent and suicidal behaviors occur when he is forced to share a cell.[44]

On December 8, 2020, Robinson submitted a request to the medical unit to be seen for depression and headaches.[45] The following day, a clinician came to Robinson's cell and told him that the medical and mental health units were not seeing patients because of the facility lockdown and advised him to drink water and try to relax as treatment for his headaches and severe depression.[46] The clinician said that Dr. Cruz had sent her.[47]

---

[38] *Ibid.* (¶ 30).
[39] *Ibid.*
[40] *Ibid.* (¶ 26).
[41] *Ibid*.
[42] *Ibid.*
[43] *Ibid.*
[44] *Ibid.* (¶ 27).
[45] *Ibid.* (¶ 28).
[46] *Id.* at 11 (¶ 29).
[47] *Ibid.*

As of the filing of the complaint, Robinson does not have single-cell status but still has not been given a cellmate.[48] Robinson has informed Dr. Cruz and Kinzer that he responds better to mental health treatment when in a single cell.[49] When he was in a single cell from 2018 to 2020 he worked with a mental health provider at Garner and was able to lower his mental health score from three to two.[50]

Robinson filed this complaint on January 14, 2021, alleging claims for deliberate indifference to mental health needs, deliberate indifference to personal safety, conspiracy, denial of procedural due process, denial of equal protection, and violation of his rights under the ADA.[51] He seeks declaratory and injunctive relief and monetary damages.[52]

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).[53]

---

[48] *Ibid.* ¶ (31) ("At the filing of this complaint I still remain off official single-cell status but have not been given a cellmate.").
[49] *Id.* at 12 (¶ 32).
[50] *Ibid.*
[51] *See* Doc. #1.
[52] *Id.* at 17-18.
[53] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Eighth Amendment deliberate indifference to mental health needs and safety*

Robinson alleges that Kinzer, Cruz, and Molina were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[54] He also alleges that Butrisk, Walker, Sandler, Osden, Doe, and Shepherd were deliberately indifferent to his safety in violation of the Eighth Amendment.[55]

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm or to the serious medical needs of a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A deliberate indifference claim under the Eighth Amendment has two requirements. First, the prisoner must allege that he was subject to an objectively serious risk of harm or serious medical need, as distinct from what a reasonable person would understand to be a minor risk of

---

[54] Doc. #1 at 17 (¶ A).
[55] *Id.* at 14 (¶¶ 38-39).

8

harm or minor medical need. Second, the prisoner must allege that a defendant prison official acted not merely carelessly or negligently but with a subjectively reckless state of mind akin to criminal recklessness (*i.e.*, reflecting actual awareness of a substantial risk that serious harm to the prisoner would result). *See, e.g., Spavone v. N.Y. Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*). As the Second Circuit has recently explained, "[d]eliberate indifference in this context means the official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020).

Robinson alleges that he suffers from severe depression, headaches, and suicidal thoughts. I will assume for initial pleading purposes only that these constitute objectively serious medical conditions and risks of harm. *See Young v. Choinski*, 15 F. Supp. 3d 194, 199 (D. Conn. 2014) (noting that "[i]n the context of mental health needs, propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks have been viewed as 'sufficiently serious'") (collecting cases). As to whether Robinson has pleaded facts that plausibly suggest that each defendant acted with a subjectively reckless state of mind, I will address each defendant in turn.

### *Kinzer*

Robinson alleges that Kinzer treated him from August through December 2020 in an unprofessional manner and on multiple occasions failed to offer treatment in response to his suicidal and depressive thoughts and severe weight loss. Robinson also alleges that Kinzer did

9

nothing in response to his claims that he responded better to treatment when he was in a single cell. The Eighth Amendment, however, does not entitle an inmate to a single cell. *See Germano v. Cook*, 2020 WL 264763 at *11 (D. Conn. 2020) (citing cases). Accordingly, to the extent that Robinson complains that Kinzer would not support his request for single-cell status, this does nothing to suggest that Kinzer was acting in violation of Robinson's Eighth Amendment rights, especially considering Robinson's allegation that he has not actually had to share his cell with another prisoner despite his loss of a formal designation of single-cell status.

Moreover, to the extent that Robinson complains that Kinzer was not "responsive" to his medication requests, this allegation does not suggest a violation of the Eighth Amendment because Robinson does not allege that Kinzer was a physician with authority to prescribe medications. *See Goodrich v. Clinton Cty. Prison*, 214 F. App'x 105, 112 (3d Cir. 2007) (mental health clinician not liable under Eighth Amendment for being "unresponsive" to prisoner's medication requests). Robinson's remaining conclusory allegations about Kinzer not meeting with him enough or being disagreeable and generally ineffective during their meeting sessions are not enough to suggest that Kinzer acted with a subjective state of mind to violate Robinson's right to be free from cruel and unusual punishment. Accordingly, Robinson has not alleged plausible grounds for relief under the Eighth Amendment against Kinzer.

### *Dr. Cruz*

Robinson alleges that Dr. Cruz told him that nothing in his files showed a mental health need for a single cell. Robinson also alleges that he and Dr. Cruz have different views on whether his mental health conditions require a single cell and whether mental health records from his confinement in Ohio four years ago are needed to determine his current mental health

needs. In response to Robinson's complaints about Kinzer, Dr. Cruz agreed to have Robinson seen by a different clinician but never followed through with assigning him another counselor. Although Robinson very well may be justified in his belief that he needs a different counselor, "the Constitution does not entitle a prisoner to a mental health counselor of his choice." *Germano*, 2020 WL 264763 at *10. Nor does the complaint allege that Robinson was categorically denied mental health treatment, and a prisoner's mere disagreement with a medical professional about the proper course of treatment does not rise to the level of a violation of the Eighth Amendment. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Accordingly, Robinson has not alleged plausible grounds for relief against Dr. Cruz as to the denial of a single cell, not assigning Robinson a new counselor, and his overall mental health treatment.

### *Molina*

Robinson alleges that Molina is the ADA coordinator.[56] Robinson alleges that he submitted an ADA reasonable accommodation form to Molina and asked her to obtain and review his records from Ohio and Connecticut in support of his single-cell status request, and that she stated there was nothing in those files showing that he must have a single cell.[57] But Robinson does not allege that Molina failed to offer him mental health treatment or even failed to respond to his request that she review the files. Instead, his claim against Molina amounts to a disagreement with her review of his ADA claim and her statement that there was nothing in his files showing a need for a single cell. Accordingly, because Robinson has not alleged facts to show that Molina acted with a subjectively reckless state of mind to violate Robinson's rights,

---

[56] *Id.* at 9 (¶ 20).
[57] *Id.* at 9-10 (¶¶ 20-21, 24).

11

Robinson has not alleged plausible grounds to support a claim against Molina under the Eighth Amendment.

***Butrisk, Walker, Sandler, Osden, Doe, and Shepherd***

Robinson alleges that, when considering his requests for a single cell, Butrisk, Walker, Sandler, Osden, Doe, and Shepherd violated the Eighth Amendment and subjected him to an unreasonable risk to his safety by not investigating the circumstances of his confinement in Ohio and reason for his transfer to Connecticut.

Robinson makes only conclusory allegations that he believes officials in Cheshire might retaliate against him by potentially putting violent inmates in a cell with him. Absent more specific allegations, the fact that a situation existed in Ohio that warranted single-cell status and that an unnamed officer retaliated against him at Garner is not relevant to whether Robinson needed to be confined in a single cell while at Cheshire in 2020 and to the present. Robinson does not allege that correctional officers at Cheshire have threatened to place him in a cell with violent inmates or made comments about the reason he was transferred from Ohio.

Furthermore, Robinson was repeatedly told that the defendants had reviewed his file and found no reason for single-cell status in 2020. The fact that Robinson would prefer a single cell does not show that the defendants disregarded an excessive risk to his health or safety. Robinson alleges that he witnessed fights between mentally ill and healthy inmates Cheshire, and has been attacked by cellmates in the past, but these general fears about prison security do not show that prison officials have been deliberately indifferent or that these concerns would be addressed if he were designated for single-cell status. "While an actual physical attack is not required to demonstrate a substantial risk of serious harm, mere fear of an assault is insufficient to state a

claim for an Eighth Amendment violation," so "a pleading which merely asserts an unsubstantiated fear of harm fails to plead a substantial risk of serious harm." *Shand v. Chapdelaine*, 2019 WL 2302513 at *4 (D. Conn. 2019). Accordingly, Robinson has not alleged plausible grounds for relief under the Eighth Amendment against Butrisk, Walker, Sandler, Osden, Doe, and Shepherd.

### *Conspiracy*

Robinson alleges that defendants Butrisk, Walker, Molina, and Cruz all conspired to deny him a single cell or proper ADA review. But his allegations of a conspiracy among these defendants are conclusory, and "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002). His claim is also foreclosed by the rule—known as the "intracorporate conspiracy" doctrine—that members of the same organization may not be held liable for conspiracy under the federal civil rights law. *See Federal Ins. Co. v. United States*, 882 F.3d 348, 368 n.14 (2d Cir. 2018); *Dupigny v. Hannah*, 2021 WL 151043 at *4 (D. Conn. 2021); *Dowd v. DeMarco*, 314 F. Supp. 3d 576, 587 (S.D.N.Y. 2018). Accordingly, Robinson has not alleged plausible grounds for relief for his conspiracy claim.

### *Equal protection*

Robinson alleges that Butrisk, Walker, Molina, Sandler, Osden, and Cruz denied him equal protection of the laws by creating a discriminatory practice regarding assignment to single-

cell status.[58] "The Equal Protection Clause…commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise or constitutional rights, or malicious or bad faith intent to injure a person.'" *Trowell v. Theodarakis*, 2018 WL 3233140, *3 (D. Conn. 2018).

Robinson does not allege that he is a member of a protected class for equal protection purposes. Robinson claims that he has more difficulty securing a single cell because he is not a "native Connecticut inmate." Although the Supreme Court has long held that "classifications based on alienage, like those based on nationality or race, are inherently suspect," *see Graham v. Richardson*, 403 U.S. 365, 371-72 (1971), Robinson does not claim that his nationality is the basis of his discrimination.

Robinson also claims that his mental health conditions render him disabled. But the Supreme Court has held that disability is not a suspect classification under the Equal Protection Clause, explaining that "the Fourteenth Amendment does not require States to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *See Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 357 (2001).

And Robinson does not include factual allegations that suggest that denial of single cell-

---

[58] Doc. #1 at 15 (¶ 42).

status was wholly irrational. Nor does Robinson allege that he was treated differently than any other similarly situated person. He alleges that he has witnessed other inmates receive a single cell, but he has not shown how he is similarly situated to those inmates, as would be required to show that he is similarly situated to those inmates who are being provided with single cell-status.[59]

"Alternatively, an equal protection claim can sometimes be sustained if the plaintiff claims that the has been irrationally singled out as a class of one." *Nicholson v. Hannah*, 2020 WL 3086022, at *5 (D. Conn. 2020). "To succeed on such a claim, plaintiffs must show an extremely high degree of similarity between themselves and the persons to who they compare themselves"; in other words, "such a plaintiff must be *prima facie* identical to the persons alleged to receive irrationally different treatment." *Progressive Credit Union*, 889 F.3d 40, 49 (2d Cir. 2018). Robinson makes no allegations to suggest that he was singled out for arbitrarily discriminatory treatment in being denied single-cell status. Accordingly, Robinson has not alleged plausible grounds for relief under the Equal Protection Clause.

### *Procedural due process*

Robinson alleges that Butrisk, Walker, and Doe denied him procedural due process by failing to conduct a hearing before removing him from single-cell status. A claim for a violation of procedural due process "proceeds in two steps: We first ask whether exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219

---

[59] Doc. #1 at 11, 15 (¶¶ 31, 42).

(2011) (*per curiam*).

In the prison context, which involves individuals whose liberty interests have already been severely restricted, a prisoner has a liberty interest protected under the Due Process Clause only if the state has created such an interest in a statute or regulation and if the deprivation of that interest caused him to suffer an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484-88 (1995); *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000).

Here, Robinson does not allege that Connecticut has created a liberty interest in single-cell status by statute or regulation. Just as the Constitution does not guarantee a prisoner a right to a single cell, *see Germano*, 2020 WL 264763, at *11, a prisoner who has previously been granted single-cell status does not have a liberty interest in retaining this status. *See Parks v. Lantz*, 2012 WL 1059696, at *14-15 (D. Conn. 2012). Accordingly, Robinson has not alleged plausible grounds for relief under the Due Process Clause.

### *Disability discrimination*

Finally, Robinson alleges that he was subject to discrimination in violation of his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. But to the extent that he claims intentional disability discrimination claim on the basis of what he believes to be inadequate mental health treatment and deprivation of single-cell status, this intentional disability claim fails because he has not alleged facts to show that any adverse action was taken by prison officials *because* of his mental disability. *See Walsh v. Coleman*, 2020 WL 7024927, at *5 (D. Conn. 2020) (dismissing intentional disability discrimination claim by prisoner denied single-cell status). Nor does Robinson allege any plausible failure-to-accommodate claim, because he does

not allege facts to show that single-cell status is necessary in order for Robinson to have an equal opportunity to receive mental health treatment or other prisoner services and benefits. *See Wright v. New York State Dept. of Corrections*, 831 F.3d 64, 72-73 (2d Cir. 2016); *Walsh*, 2020 WL 7024927, at *5. To the contrary, he seeks single-cell status as an end in itself. *See Bird v. California Dep't of Corr. & Rehab. (CDCR)*, 2016 WL 7383307, at *4 (E.D. Cal. 2016) (dismissing prisoner's failure-to-accommodate claim because "[p]laintiff's request for single cell status does not appear to allege that he is denied access to a program or service," but "[i]nstead, Plaintiff appears to allege that his medical condition is exacerbated by double cell status"). Accordingly, Robinson has not alleged plausible grounds for relief under the ADA.

## CONCLUSION

For the reasons set forth above, the Court DISMISSES the complaint without prejudice pursuant to 28 U.S.C. § 1915A. In light of the Court's dismissal of the complaint, Robinson's motion for a temporary restraining order and preliminary injunctive relief is DENIED as moot. The Court also DENIES the motion to appoint counsel (Doc. #4) in light of the dismissal of the complaint.

The Clerk of Court shall close this case. If Robinson is able to allege additional facts that show valid grounds to proceed under federal law against any defendant, he may file a motion to reopen this action along with an amended complaint by June 18, 2021.

It is so ordered.

Dated at New Haven, Connecticut this 17th day of May 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge